IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JASON D. CLOUGH, | ) | Civil No. 04-1373-JO |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| BRIAN BELLEQUE, Superintendent, | ) | |
| Oregon State Penitentiary, | ) | |
| | ) | |
| Respondent. | ) | |

Caroline L. Davidson
FEDERAL PUBLIC DEFENDER'S OFFICE
101 S.W. Main Street, Suite 1700
Portland, OR  97204

   Attorney for Petitioner

Lester R. Huntsinger
STATE OF OREGON
Department of Justice
1162 Court Street N.E.
Salem, OR  97301-4096

   Attorney for Respondent

JONES, Judge:

This matter is before the court on petitioner Jason Clough's petition for habeas corpus relief (# 2) pursuant to 28 U.S.C. § 2254.  In his petition, petitioner challenged his 1997 murder conviction on six grounds:  three due process claims and three claims of ineffective assistance of counsel.  In his memorandum in support of the petition, however, petitioner "narrow[ed] his claims to two claims of ineffective assistance of counsel . . . ."  (Memorandum in Support of Petition for Habeas Corpus (#39) (hereafter "Memorandum") at 13.)  Petitioner describes these claims as counsel's failure to:  (1) compel witness William Dean to testify by challenging Dean's counsel's assertion of the privilege against self-incrimination on Dean's behalf; and (2) offer Dean's taped statement under certain hearsay exceptions.  (Id.)  For the reasons explained below, both claims lack merit and the petition for habeas relief is denied.

## BACKGROUND

Petitioner's murder conviction stemmed from a shooting on a Tri-Met bus.  Petitioner, his girlfriend Regina Williams, and his sister Bonnita Clough, got on the bus a few stops ahead of Reuben Mainor, Brian Thomas, William Dean, and Delraye James.  Petitioner and Mainor got into a verbal confrontation, and James intervened.  Petitioner shot James in the neck with a handgun, killing him.  Petitioner then left the bus through the front door.  Dean followed petitioner off the bus and fired a handgun at him three or four times, hitting him once.

A Multnomah County grand jury returned a joint indictment charging petitioner with Murder and William Dean with Attempted Murder with a Firearm, Assault in the First Degree with a Firearm, and Assault in the Second Degree with a Firearm.  (Respondent's Exhibits to Answer (#17) (hereafter "Resp't Ex.") 102.)  Both men entered pleas of not guilty.  The trials

2 - OPINION AND ORDER

were severed, and with respect to petitioner, a jury returned a unanimous guilty verdict on the murder charge. (Resp't Ex. 111-115; 117; Sentencing Transcript, p. 2.) The court imposed a sentence of life in prison, with a 25-year minimum term. (Id. at Ex. 101.)

As pertinent to the present case, petitioner admitted that he shot the victim, James, but contended that it was in self-defense, defense of another (his pregnant girlfriend), and the product of extreme emotional disturbance. (Memorandum at 2.)

Petitioner filed a direct appeal of his conviction and sentence, raising, among other grounds, trial court error in excluding Dean's statements to the police. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. (Resp't Ex. 106, 107.)

In post-conviction proceedings, petitioner claimed, as relevant, that trial counsel was ineffective for failing to compel Dean to testify after he allegedly waived the privilege against self-incrimination by testifying before the grand jury; and for failing to offer Dean's statement as a statement against interest under Oregon Evidence Code ("OEC") 804(3)(c), a statement relating to a startling event under OEC 803(2), or under certain residual exceptions to the hearsay rule. (Id. at 108, pp. 8-9.) The post-conviction court denied the petition. (Id. at 124.) On appeal, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review on December 9, 2003. Clough v. Lampert, 187 Or. App. 502, 68 P.3d 274, *rev denied*, 336 Or. 192, 82 P.3d 626 (2003). Petitioner timely filed the instant petition on September 24, 2004.

/ / /

/ / /

3 - OPINION AND ORDER

## DISCUSSION

I.    The Merits

Petitioner sets forth two grounds for relief in his memorandum.  Petitioner alleges ineffective assistance of counsel due to his counsel's failure to:  (1) compel Dean to testify by challenging Dean's counsel's assertion of the privilege against self-incrimination on Dean's behalf; and (2) offer Dean's out of court statement under a certain hearsay exception. (Memorandum at 13.)

A.    Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United  States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "AEDPA circumscribes a federal habeas court's review of a state-court decision."  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  A federal court's "independent consideration of the constitutional issue is neither relevant, nor necessary to dispose of the question presented."  Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  "'The only question that matters under § 2254(d)(1), . . . is whether or not the . . . state court's decision is contrary to or involved an unreasonable application of, clearly established Federal law."  Id. (quoting Lockyer, 538 U.S. at 64).  The state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court acts "contrary to" clearly established federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Lockyer, 538 U.S. at 73; Bell v. Cone, 535 U.S. 685, 694 (2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Ramdass v. Angelone, 530 U.S. 156, 164-66 (2000). Only those Supreme Court holdings in effect at the time the state court renders its decision constitute "clearly established Federal law" under § 2254(d)(1). Lockyer, 538 U.S. at 71; Clark, 331 F.3d at 1069.

A state court decision is an "unreasonable application of" clearly established federal law if the court identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case or unreasonably refuses to extend the governing legal principle. Lockyer, 538 U.S. at 75; Williams, 529 U.S. at 412-13; Ramdass, 530 U.S. at 166. Under this standard of review, a federal court may not issue a writ of habeas corpus simply because it concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly. Lockyer, 538 U.S. at 75-76; Williams, 529 U.S. at 411. Rather, the state court decision must be "objectively unreasonable." Id. at 1175 (citing Williams, 529 U.S. 409; Bell, 535 U.S. at 699; Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam)).

B.    Facts Pertaining to Petitioner's Habeas Claims

On April 27, 1996, while in custody, Dean, the witness who shot petitioner, gave a tape-recorded statement to the police some eight to nine hours after the shooting. (Resp't Ex. 118.) Dean described petitioner's shooting of James and then Dean's shooting of petitioner. He stated that he had "seen the girls [sic] on top of [James]," that "the girl and [James] fell," that petitioner

"took the gun, pushed the girl's head out of the way, shot at [James]," and that James was on the floor with the girl on top of him.  (<u>Id.</u> at p. 5.)  Dean also stated that James was "[t]rying to get up [and] [t]rying to move," that "the girl was on top of him, [b]ut [h]e didn't grab nobody," that the girl was face up and he was under her, and that James was "more, kinda, turned."  (<u>Id.</u> at p. 6.)  Dean then stated that after he saw James bleeding and knew that James was going to die, he "got out the gun, got off the bus and fired at [petitioner]."  (<u>Id.</u>)[1]

Before petitioner's and Dean's cases were severed, the trial court held a pretrial hearing to address several issues, including Dean's motion to suppress his statements to the police. Portland Police Officer Taylor testified at the hearing that Dean made the following statements:

> that he recalled a -- what he described as a fat light-skinned girl fall on top of [James] and that they both fell to the floor of the bus.  He stated that Delraye James was trying to get up from the floor of the bus but was unable to, and at this point Jason Clough reached down, pushed -- with one hand pushed the girl's head to the side and then shot Delraye James in the neck.  He said that as he was watching this he was pinned against the seats on the left side of the bus up against the other passengers, that he was unable to move or assist James before he was shot.  He described the gun that Clough was using as a large black semiautomatic pistol.  He said that Clough then ran -- jumped off the bus and attempted to run away.  And he said that he had brought his own pistol onto the bus with him. It had been in a white plastic bag along with a domino game, which we found on the bus later that day -- or earlier that day.  And he took that pistol, jumped off the bus, took a few steps and then fired at Jason Clough, as Clough was running westbound on Broadway.

(Memorandum at 5-6 (<u>quoting</u> Tr. 65-66.))  The judge ruled that Dean's statements were voluntarily made after a valid waiver of his constitutional rights.

At the start of the trial, trial counsel advised the court that he had subpoenaed Dean.

---

[1]Dean also testified to the grand jury about the incident.  (Resp't Ex. 102, p. 2.)

A lawyer representing Dean was present in the courtroom. The prosecutor noted his suspicion that Dean would assert his "right not to testify" and stated: "[a]nd if Mr. Dean is not going to testify then his statements contained in the reports could not be referred to in the defense case. Unless, of course, he in fact chooses to testify." (Memorandum at 6 (quoting Tr. 12-13).) The parties agreed not to refer to any statements made by Dean until trial counsel made a decision to call Dean and the court had an opportunity to rule on the issue out of the presence of the jury.

After the prosecution rested, trial counsel alerted the court to Dean's absence despite the subpoena. He noted that "obviously we served him and we believe he's a critical witness in this case, and personally served him through his attorney." (Memorandum at 6 (quoting Tr. 531).) Noting that "the privilege against self-incrimination under the Fifth Amendment has to be personally asserted," the trial court asked Dean's counsel only what he understood his client's choice to be. Tr. 531-32. Dean's counsel stated: "I have spoken with Mr. Dean most recently on Wednesday and he is willing to come into court here and personally assert his Fifth Amendment right. We have given him the advice to assert it, and he's so indicated that he will follow our advice if called to testify." Tr. 532. Rather than ask that Dean appear in person, trial counsel stated that he was "satisfied with Mr. Sherlag's representation, that his client would not testify." Tr. 533. The trial court commented:

> If he took the stand he would personally assert the right of privilege. So I think
> that's agreeable with the Court to accept that representation. I don't think there's
> any particular magic in having him, as long as we know it's his choice. And I
> understand from what you tell us that it is. And, frankly, I had assumed that he
> would choose not to testify under the circumstances.

Tr. 533. Trial counsel then stated: "[y]ou know, I did not intend on asking Mr. Dean any incriminating questions. And I know that's not the standard but . . . ." Id. The court responded

that "[t]he problem is if he starts answering questions he'll likely waive his right to answer other

questions," and noted for the record that Dean was unavailable because he asserted his right to

remain silent.  Tr. 533-34.

After the court deemed Dean unavailable, trial counsel attempted to bring Dean's

statement in through Officer Taylor.  When the prosecutor objected based on hearsay, trial

counsel argued that he was not offering the statement for the truth of the matter asserted.

Tr. 539-41.  The court rejected that argument, reasoning that in fact, trial counsel was offering it

to establish that petitioner's girlfriend had been on top of James when petitioner shot him.

Tr. 541-42.  The court asked if trial counsel had any hearsay exception that he wished the court

to consider, to which counsel responded "I don't have one specific. If you want to take a few

minutes I'll look through the evidence code and find something." Tr. 542.  Trial counsel then

offered the statement under OEC 804 (3)(f), the hearsay exception for unavailable witnesses

where there are "guarantees of trustworthiness" equivalent to those in other hearsay exceptions.

Characterizing Dean's statement as "self-serving" (Tr. 543), the court rejected that argument and

ruled that he could not "find the guarantees of trustworthiness that would make this statement

comparable to the other kinds of statements that are specifically admissible under the rule."

Tr. 547.

At the conclusion of the defense case, trial counsel asked the court to reconsider the

hearsay matter, again conceding that Dean had a right not to testify at the trial.  The trial court

again ruled that the statement did not "have equivalent circumstantial guarantees of

trustworthiness" as required by OEC 804 (3)(f)(3).  Tr. 739-43.  The court reasoned:

8 - OPINION AND ORDER

[I]f Mr. Dean were to say that the young lady was on top of [James], it might tend to put -- well, it does tend to put the defendant in not as bad a light as he appears in without that evidence. But that doesn't seem to do much for the trustworthiness of Mr. Dean. It doesn't much change the nature of what Mr. Dean did.  It doesn't expose him to prosecution, he's exposed in any event."

Tr. 742.

C.    Analysis

To prevail on a claim of ineffective assistance of counsel, petitioner must show both that (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The first part of this test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  While this burden is not insurmountable, there is a strong presumption that counsel's conduct falls within "the wide range of reasonable professional assistance."  Id. at 689.

To establish the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "result of the proceeding was fundamentally unfair or unreliable."  United States v. Palomba, 31 F.3d 1456, 1460-61 (9th Cir. 1994) (quoting Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)).

1.    Trial Counsel's Failure to Challenge Dean's Counsel's Assertion of Privilege Against Self-Incrimination

Petitioner first alleges that his trial counsel was ineffective for failing to challenge Dean's counsel's assertion of the privilege against self incrimination on Dean's behalf.  (Memorandum

at 13.)  Specifically, petitioner asserts that his trial counsel erred by failing to argue that "Dean

had no right to make a blanket refusal to testify through his lawyer" because Dean gave a

statement to the police and testified before the grand jury, thereby waiving his privilege against

self-incrimination.  (Id. at 14, 17.)

Following an evidentiary hearing, the post-conviction court entered the following

pertinent findings of fact and conclusions of law:

> A.  Trial counsel did attempt to compel William Dean to testify and to
> have Dean's statement to the police entered into evidence.  The trial court ruled
> against these efforts and claims of trial error were denied on appeal.
>
> B.  Petitioner failed to prove that trial counsel rendered inadequate
> assistance.
>
> C.  Petitioner failed to prove that even if trial counsel should have been
> able to have Dean's statement to the police admitted, it would have had a
> tendency to affect the outcome of the trial.  Petitioner's defense was that he shot
> the victim because the victim was choking his girlfriend.  Dean's statement to the
> police indicates that the victim never had his arm around petitioner's girlfriend
> and never grabbed her.  This directly contradict's petitioner's testimony and may
> be why trial counsel did not exert greater effort to have Dean testify.

(Resp't Ex. 124, p. 1.)

Petitioner argues that this court owes no deference to the findings of the state post-

conviction court on the issue of his trial counsel's alleged failure to compel Dean's testimony

because the post-conviction court "failed to give a decision at all."  (Memorandum at 25.)

According to petitioner, the post-conviction court only "found vaguely that counsel 'sought to

compel' Dean's testimony."  Id.

Contrary to petitioner's contentions, the state court's findings are presumed correct.  *See*

Lockyer, 538 U.S. at 70.  The post-conviction court clearly stated that trial counsel attempted to

compel Dean to testify and that the trial court ruled against counsel's efforts.  (Resp't Ex. 124,

p. 1.)  Moreover, the court reasoned that trial counsel may not have exerted "greater effort to

have Dean testify" because Dean's statement to the police "directly contradict[ed] petitioner's

testimony."  (Id. at p. 2.)  In other words, I find no support for petitioner's contention that the

post-conviction court "failed to give a decision at all" regarding trial counsel's efforts to compel

Dean's testimony.

Moreover, having thoroughly reviewed the record in this case, I find that petitioner has

not met the burden of rebutting the findings of the state post-conviction court with clear and

convincing evidence.  On collateral review, "it is the habeas applicant's burden to show that the

state court applied Strickland to the facts of his case in an objectively unreasonable manner."

Woodford, 537 U.S. at 25.  In this case, petitioner's trial counsel subpoenaed Dean, and Dean's

counsel indicated that Dean would invoke the Fifth Amendment if he appeared.[2]  Tr. 532.

Petitioner's trial counsel then noted that he did not intend to ask Dean any "incriminating

questions."  Tr. 533.  Despite this, the court opined that if Dean started answering questions he

could "likely waive his right to refuse to answer other questions."  Tr. 533.  Thus, it was the

court, not petitioner's trial counsel that made the final determination to accept Dean's counsel's

assertions that Dean would assert his privilege against self-incrimination.  Accordingly,

petitioner has not met the burden of showing that the state post-conviction court applied

Strickland in an objectively unreasonable manner.

---

[2]In Oregon, "[a] criminal defendant may invoke the right to be free from compelled self-incrimination through counsel."  State v. Wilson, 323 Or. 498, 511, 918 P.2d 826 (1996) (citing State v. Simonsen, 319 Or. 510, 878 P.2d 409 (1994)).

Finally, even if petitioner succeeded in proving that his trial counsel erred by failing to compel Dean to testify, such an error would not have prejudiced petitioner's defense. *See* Strickland, 466 U.S. at 692. After undertaking a thorough review of the record, I find that even if trial counsel had compelled Dean's testimony, it would not have affected the outcome of the case. In post-conviction proceedings, petitioner offered no evidence that Dean waived the privilege against self-incrimination before the grand jury or that Dean would not have invoked the privilege if called to testify. Moreover, petitioner offered no evidence that Dean's testimony would have been favorable to the defense. Thus, I cannot conclude that petitioner's trial counsel's failure to compel Dean's testimony prejudiced petitioner's defense. Accordingly, the state post-conviction court's decision denying habeas relief was neither contrary to, nor unreasonable application of, clearly established federal law, and petitioner is not entitled to relief on the merits of his first ineffective assistance of counsel claim.

2.  Trial Counsel's Failure to Offer Dean's Out of Court Statement to Police Under Certain Hearsay Exception

Petitioner also alleges that his trial counsel was ineffective for failing to offer Dean's out of court statement under the proper hearsay exception. (Memorandum at 27.) Specifically, petitioner asserts that his trial counsel erred by failing to offer Dean's statement as a "statement against interest" under OEC 804 (3)(c), instead of offering it as a statement where there are "guarantees of trustworthiness" under OEC 804 (3)(f). Id. Petitioner contends that the statement prejudiced petitioner's defense because Dean's statement supported petitioner's explanation that "James was tangled up on the floor with his pregnant girlfriend." (Id. at 29.)

As noted above, the state post-conviction court entered findings and conclusions related to petitioner's claim, finding that petitioner's trial counsel attempted "to have Dean's statement to the police entered into evidence."  (Resp't Ex. 135, p. 3.)  The court also determined that petitioner "failed to prove that trial counsel rendered inadequate assistance."  Moreover, the court concluded that petitioner "failed to prove that even if trial counsel should have been able to have Dean's statement to the police admitted, it would have had a tendency to affect the outcome of the trial."  Id.

My review of the record leads me to conclude that petitioner has not produced clear and convincing evidence to:  (1) rebut the presumption that the state post-conviction court's findings are correct with respect to petitioner's counsel's handling of Dean's statement or (2) to show that the outcome of the trial would have been altered if petitioner's counsel had asserted the "statement against interest" hearsay exception.

First, petitioner has not set forth clear and convincing evidence that the "against penal interest" hearsay exception applies.  In order for a hearsay statement to be admissible as a statement against interest under OEC 804 (3)(c):  the declarant must be unavailable; the statement must tend to subject the declarant to criminal liability; and the statement must be such that a "reasonable person in the declarant's position would not have made the statement unless the person believed it to be true."  State v. Cook, 340 Or. 530, 537, 135 P.3d 260 (2006). Although it is clear that Dean was unavailable, it is unclear whether his statement tended to subject him to criminal liability.  In fact, according to the trial court, the statement did not "expose [Dean] to prosecution" because he was "exposed in any event."  Tr. 742.

13 - OPINION AND ORDER

In addition, petitioner has not set forth clear and convincing evidence that a reasonable person in Dean's position would not have made the statement unless he believed it to be true. To the contrary, there are reasons to suspect that Dean might have made the statement for other reasons. For example, Dean was in custody and being interrogated in the early morning hours when he made the statement. In addition, Dean's statements regarding his involvement in the incident minimized his criminal liability. Thus, petitioner has failed to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness. *See* Strickland, 466 U.S. at 687.

Further, even if petitioner's trial counsel erred by failing to offer Dean's statement as a "statement against penal interest," such an error would not have prejudiced petitioner's defense. Although a portion of Dean's statement to the police supported petitioner's defense, I agree with respondent that much of Dean's statement "was devastating to the defense." (Reply to Memorandum in Support of Petition for Habeas Corpus Relief at 11.) For example, when asked whether James had his arm around petitioner's girlfriend, Dean responded, "[n]ope." (Resp't Ex. 118, p. 6.) Moreover, Dean stated that James "didn't grab nobody." Id. In other words, even if Dean's statement had been admitted into evidence, it would not have affected the outcome of the case. Accordingly, the state post-conviction court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law, and petitioner is not entitled to relief on the merits of his second ineffective assistance of counsel claim.

/ / /

/ / /

/ / /

14 - OPINION AND ORDER

## <u>CONCLUSION</u>

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is DENIED, and this proceeding is DISMISSED, with prejudice.

DATED this 23rd day of January, 2007.


 /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge